UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALANTRA LLC,<br><br>            Plaintiff,<br><br>  v.<br><br>APEX INDUSTRIAL TECHNOLOGIES LLC,<br><br>            Defendant. | Civil Action No. 1:20-cv-10852-FDS<br><br>Leave to File Granted: 7/24/20 |

**PLAINTIFF ALANTRA LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS PURSUANT TO RULE 12(b)(6) and SPECIAL MOTION TO DISMISS PURSUANT TO G.L. c. 231, § 59H**

**I.    Introduction.**

Plaintiff and Counterclaim Defendant Alantra LLC ("Alantra") submits this Memorandum of Law in support of its Motion to Dismiss Counterclaims Pursuant to Fed. R. Civ. P. 12(b)(6) and G.L. c. 231, § 59H (the "Motion"). As set forth more fully below, the Counterclaims asserted by Defendant and Counterclaim Plaintiff Apex Industrial Technologies LLC ("Apex") fail as a matter of law because the disclosure of information ███████████ that Apex contends is confidential, has not caused Apex any damages. Without Apex having sustained any damages to date, its claims for breach of contract and breach of fiduciary duty cannot proceed and should be dismissed. In fact as set forth in the affidavit supporting the Motion, much of the information that Apex contends is "confidential" and filed under seal has been disclosed in public SEC filings. Therefore, reference to those same facts by Alantra ███████████ could not cause Apex harm or injury.

1

Moreover, Alantra also asserts a Special Motion to Dismiss the Counterclaims pursuant to G.L. c. 231, § 59H (the Massachusetts anti-SLAPP statute). The breach of contract and breach of fiduciary duty counterclaims (the "Counterclaims") are based solely on Alantra's petitioning activities, and Apex cannot show that Alantra's pursuit here of its right to be paid ▌ ▌ is devoid of any reasonable factual support or any arguable basis in law, or caused Apex any actual injury. Accordingly, pursuant to the anti-SLAPP statute, the Counterclaims must be dismissed, and Alantra awarded its reasonable attorney's fees and costs related to the Motion.

**II.     Background.**

The following background is pertinent for considering the Motion.[1]

**a.  Alantra's Complaint.**

Plaintiff Alantra is a Massachusetts corporation and global investment bank with its U.S. headquarters located in Boston and Apex is a provider of supply chain products and technologies headquartered in Mason, Ohio. Complaint and Answer ¶¶ 1-2. ▌

▌

▌

▌                                                Complaint and Answer ¶ 8. ▌

▌

▌

▌

---

[1] Alantra filed a request for leave on July 23, 2020 to file the Motion and its supporting memorandum and affidavit under seal. Though Alantra does not believe that any of the information contained in the Complaint or the Apex Answer and Counterclaims is in fact confidential, Apex has alleged as much and obtained leave to file under seal. As Alantra refers here to information that was impounded, it requested leave to file its Motion papers under seal.

██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████ Complaint and Answer ¶ 12. ████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████████ *Id.* ███████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████ Complaint and Answer ¶ 13.
███████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████

Complaint and Answer ¶ 17 and 18.

███████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████ Complaint and Answer ¶ 19. ████

▓▓▓▓▓▓▓▓▓▓ *Id.* ▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓ Complaint and Answer ¶ 20. At that same time, Apex pursued a transaction with Fastenal without disclosing to Alantra that it was doing so. Complaint and Answer ¶ 21.

On March 30, 2020, Apex finalized a transaction with Fastenal in which Fastenal paid Apex $125 million in cash at closing for certain Apex assets. Complaint and Answer ¶¶ 25, 29.

▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓ *Id.* Alantra submitted an invoice to Apex following the closing of the Fastenal transaction ▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓ Complaint and Answer ¶ 29. After Apex refused to pay Alantra ▓▓▓▓▓▓▓▓▓▓ Alantra filed suit on May 5, 2020 and asserted claims for breach of contract and unjust enrichment.

**b. Apex's Counterclaims.**

Apex did not move to dismiss the Complaint, but instead submitted an Answer, Affirmative Defenses and Counterclaims. The stated basis of the Counterclaims was the alleged "intentional misuse of ▓▓▓▓▓ confidential information. . . . ▓▓▓▓▓

Counterclaims ¶ 1. Apex refers to a "blatant effort to pressure Apex to pay ███████ ████████, and contends "Alantra is 'going public' with Confidential Information. Counterclaims ¶ 3. Apex later explains the basis of its conspiracy theory as to how the disclosure of so-called confidential information would provide any pressure on Apex to pay Alantra ███ once the information was already disseminated ████████ by citing "the implicit threat that Alantra will disclose more Confidential Information" if Apex does not pay ███. Counterclaims ¶ 24. Apex does not contend that Alantra made any threats concerning the alleged disclosure of so-called Confidential Information. Instead, the Counterclaims merely contend that "█████████ ██████████████████████████████████████████" and Apex alleges that ██████ █████████████████████████ "Apex provided a substantial amount of material, non-public, Confidential Information about its business to Alantra." Counterclaims ¶¶ 3, 15.[2]

Apex contends that the following information was "Confidential Information" disclosed by Alantra:

1. ███████████████████
2. ████████████████████████████████████████ ██████████████████████████████████████████ █
3. ████████████████████████████████████████ ████████████████████
4. ████████████████████████████████████████ █████████████████

---

[2] Apex contends █████████████████████████████████████████████████████████ █████████ Counterclaims ¶ 21. When Alantra asserted the basis of its claim in a detailed pre-litigation demand letter, Apex's counsel provided an overheated response that threatened to hold Alantra and its counsel "fully accountable for the prosecution of a patently frivolous claim." Hadfield Aff. ¶ 4. After levying such an unfounded threat to Alantra and its counsel, however, Apex did not move to dismiss the Complaint. Its contention in the Counterclaims ████████████████████████████████████████ is therefore misguided.



5. █████████████████████████████████████
██

6. █████████████████████████████████████
█████████████████████████████████████
███████████████

7. █████████████████████████████████████
██████████████████████████

8. █████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
███████████████████████████████; and

9. █████████████████████████████████████
██████████████████████████████

Counterclaims ¶ 25. Apex then asserts two causes of action in the Counterclaims, breach of contract and breach of fiduciary duty.

With respect to damages, Apex contends that it "has been and will continue to be damaged by Alantra's unauthorized disclosure of its Confidential Information" and that it has "suffered damages." Counterclaims ¶ 3, 38, 46. Apex provides scant support, however, as to how exactly it has been damaged or could be damaged. Apex alleges that the "Confidential Information could be used by Apex's current and prospective customers, competitors, employees, suppliers, lenders, partners, investors, and others in a manner detrimental to Apex." Counterclaims ¶ 28. It does not identify, however, any specific person or entity from the list that actually obtained and utilized the so-called "Confidential Information" to Apex's detriment. Instead, the only circumstance it described in any way was its allegation that "[f]or example, it appears Apex's confidential Information has ended up in the hands of one of Apex's competitors ███████████████████████████████." *Id.* But Apex does not identify who the competitor is,

does not identify what information the competitor utilized and does not describe how its receipt of information damaged Apex.[3]

### c. The Publicly Available Information Apex Contends is Confidential.[4]

The information that Apex contends is Confidential Information and that forms the basis of the Counterclaims, is not confidential at all. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Therefore, most of the information Apex complains about in its Counterclaim is not (and could not) considered confidential because it was or is <u>publicly available</u> through SEC filings. The rest of the so-called confidential information is far too general to constitute anything confidential and could not and did not cause Apex any harm.

First, the details of a previous Apex-Fastenal transaction ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and that Apex contends should not have been disclosed, was described in Fastenal's Form 10-K dated February 5, 2016. *See* Hadfield Aff. Ex. 1. In that filing, Apex was identified by name and the details of the transaction was described, including the $27 million purchase price. *Id.*

Second, the terms of the Fastenal transaction ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ were taken from Fastenal's Form 10-Q dated April 17, 2020. *See* Hadfield Aff. Ex. 2. The transaction's $125 million purchase price and the "value of segments of Apex's

---

[3] As Apex filed its responsive pleading under seal, there can be no basis why it could not provide the identity of the competitor, the information that was allegedly used or the harm that the disclosure allegedly caused.

[4] In testing the sufficiency of Apex's Counterclaims, this Court may review "documents the authenticity of which are not disputed by the parties;… official public records;… documents central to plaintiff's claim; or… documents sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

business and the allocation of goodwill" that Apex contends Alantra should not have disclosed, were provided by Fastenal in its April 17, 2020 Form 10-Q. *Id.*

Third, Apex's "arrangement with its senior lender, including the expiration of certain warrants," is also public information. The lender – MVC Capital, Inc. – disclosed in its June 9, 2020 Form 10-Q that it had been repaid by Apex. *See* Hadfield Aff. Ex. 3. The details in the MVC filing included that on March 30, 2020, Apex repaid its first lien loan in full including all accrued interest, totaling approximately $18.9 million. MVC also described that it had received a free warrant as part of the approximately $3.9 million follow-on investment it participated in on January 10, 2020 and that on March 30, 2020, MVC also received approximately $1.3 million for the sale of the warrant. *Id.*

### III. Argument.

Under the applicable standard under both Fed. R. Civ. P. 12(b)(6) and the Massachusetts anti-SLAPP statute, the Counterclaims should be dismissed.

#### a. The Breaches of Contract and Fiduciary Duty Counterclaims Fail to State a Claim Upon Which Relief may be Granted.

"While a complaint attacked by a ... motion to dismiss does not need detailed factual allegations ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions.... Factual allegations must be enough to raise a right to relief above the speculative level ... [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact)...." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007), internal citations omitted. "What is required at the pleading stage are factual 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief, in order to

"reflect[ ] the threshold requirement … that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Innacchino v. Ford Motor Co*., 451 Mass. 623, 636 (2008), quoting from *Bell Atl. Corp*., at 557.

To assert a cognizable breach of contract claim or claim for breach of fiduciary duty, a counterclaimant must allege that it sustained harmed and that a defendant caused it damages. Here, the Counterclaims lack any allegations that Apex has been harmed beyond the labels and conclusions that Apex advanced in merely stating it "has been and will continue to be damaged by Alantra's unauthorized disclosure of its Confidential Information" and that it has "suffered damages." Counterclaims ¶ 3, 38, 46. Apex's contention that "Confidential Information <u>could be used</u> by Apex's current and prospective customers, competitors, employees, suppliers, lenders, partners, investors, and others in a manner detrimental to Apex" falls well short of contending that any person or entity has in fact used confidential information to Apex's detriment. Counterclaims ¶ 28 (emphasis added). Even when Apex contends that "it appears Apex's confidential Information has ended up in the hands of one of Apex's competitors ▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉," Apex does not identify who the competitor is, does not identify what information the competitor utilized and does not allege how the competitor's receipt of information damaged Apex. *Id.*

### 1. Damages Are a Required Element to a Breach of Contract Claim.

Both New York[5] and Massachusetts law require that a party pursuing a breach of contract claim demonstrate that it sustained damages as an element of their claim. Under New York law, to maintain a cause of action for breach of contract, a plaintiff must show "the existence of a

---

[5] ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach." *Canzona v. Atanasio*, 118 A.D. 3d 837, 838-839 (2014). "A plaintiff cannot prevail on a breach of contract theory unless he sustained actual damages as a natural and probable consequence of such breach." *Rakylar v. Washington Mut. Bank*, 51 A.D. 3d 995, 995-996 (2008). Moreover, a plaintiff's claim of damages may not be too speculative to sustain a cause of action. *Lloyd v. Town of Wheatfield*, 67 N.Y. 2d 809, 810 (1986) (upholding trial court's dismissal of plaintiffs' complaint where plaintiffs' damages related to an alleged breach of contract were "too speculative as a matter of law to sustain plaintiffs' causes of action.").

Under long standing Massachusetts law, "[t]o prevail on a claim for breach of contract, a plaintiff must demonstrate that [1] there was an agreement between the parties; [2] the agreement was supported by consideration; [3]the plaintiff was ready, willing, and able to perform his or her part of the contract; [4] the defendant committed a breach of the contract; and [5] the plaintiff suffered harm as a result. *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 690 (2016); *citing Singarella v. Boston*, 342 Mass. 385, 387 (1961). Though a plaintiff need not "prove damages with mathematical certainty, damages cannot be recovered when they are remote, speculative, hypothetical, and not live within the realm of reasonable certainty." *Pierce v. Clark*, 66 Mass. App. Ct. 912, 914 (2006).

**2. Damages Are Also a Required Element to a Breach of Fiduciary Duty Claim.**

Similarly, both New York and Massachusetts law require that a party instituting a claim for breach of fiduciary duty establish that they have incurred or sustained damages. In order to sustain a claim for breach of fiduciary duty under New York law, a claimant must demonstrate: "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages

directly caused by the defendant's misconduct." *Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 83 A.D. 3d 804, 807 (2011) (upholding defendant's motion to dismiss for, *inter alia*, claimant's failure to demonstrate it suffered damages as a result of defendant's breach of fiduciary duties). In addition, under New York law, a claim for breach of fiduciary duty must be pleaded with particularity. *Id.* at 807-808.

Under Massachusetts law a plaintiff must establish: "(1) the existence of a fiduciary duty, (2) breach of that duty; (3) damages; and (4) a causal connection between the breach of the duty and the damages." *Baker v. Wilmer Cutler Pickering Hale and Dorr LLP*, 91 Mass. App. Ct. 835, 842 (2017); *see also Eisenstein v. David G. Conlin, P.C.*, 444 Mass. 258, 267 (2005) (summary judgment appropriate in favor of defendant where plaintiff could not prove damages); *DiCostanzo v. Pericomp Corp.*, 1994 WL 879364 (Mass. Super. Ct. 1994, Lauriat, J.) (granting summary judgment for defendant on the basis that plaintiff could not establish damages due to alleged breach of fiduciary duty).

### 3. Disclosure of Publicly Available or General Information Cannot Cause Damage.

As set forth above, Apex has not alleged or adequately described any actual damage or harm that it has sustained beyond its legally insufficient conclusory contention that it has suffered harm. Scrutiny of the nine bullet points it contends in Paragraph 25 of the Counterclaims contained Confidential Information (numbered 1-9 above in Section II(b)) shows that there is no way that the disclosures Apex complains of could cause it damage. Each bullet is considered in turn. With respect to No. 1, ████████████████████████████████████ ████████, surely Alantra cannot be deemed to have breached any contractual obligation or fiduciary duty by initiating this action for Apex's failure to pay. Apex provides no basis that the disclosure of ████████████████████████████████████ could cause it damage,

11

particularly here where Apex has already consummated a transaction. And the reference to the fact ███████████████████████████████████████████, could not cause Apex any harm because it already completed its transaction with Fastenal as described in SEC filings.

With respect to No. 2, 3 and 4 ████████████████████████████████████████ ███████████████████████████████████████████, the terms of the prior deal were reported in Fastenal's Form 10-K dated February 5, 2016. *See* Hadfield Aff. Ex. 1. As such, the details of the previous transaction were already public. Given that public history, the fact ████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ██████████████████████████████████

With respect to items 5, 6 and 7, there is simply no information included that could be considered confidential. No. 5 refers to ███████████████████████████████████ ████████████████████████████████████████████████████████████████████████████

With respect to No. 6 ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████ Nor can the general reference that serves as the basis for No. 7 – ████████████████████████████████████████████ – cause harm to Apex.

With respect to No. 8 and 9, the information ████████████████ reflected publicly available information taken from 2 separate SEC filings. As listed above, the $125 million purchase price and the "value of segments of Apex's business and the allocation of goodwill" that Apex contends Alantra should not have disclosed, were provided by Fastenal in its April 17,

12

2020 Form 10-Q. Hadfield Aff. Ex. 2. Similarly, Apex's "arrangement with its senior lender, including the expiration of certain warrants," was also public information disclosed by the Apex's lender, MVC Capital, Inc. in its June 9, 2020 Form 10-Q. Hadfield Aff. Ex. 3. The specific details regarding repayment amounts and warrants was disclosed in the MVC 10-Q, so Alantra's more general references to warrants and Apex's senior lender cannot be considered to have caused Apex any harm as the specific details of its lending relationship with MVC are now in the public domain.

### b. The Counterclaims Should be Dismissed Pursuant to G.L. c. 231, § 59H.

In addition to warranting dismissal under Fed. R. Civ. P. 12(b)(6), the Counterclaims should be dismissed pursuant to G.L. c. 231, § 59H, the Massachusetts anti-SLAPP statute. In enacting the anti-SLAPP statute, "the Legislature intended to immunize parties from claims 'based on' their petitioning activity." *Duracraft Corp. v. Holmes Prods. Corp*., 427 Mass. 156, 167-168 (1998). Accordingly, the statute provides broad protections for entities who exercise their right to petition from harassing litigation and the costs and burdens of defending against retaliatory lawsuits. The protections afforded by G.L. c. 231, § 59H, include a procedural remedy that permits the defendant in a SLAPP suit to file a "special" motion to dismiss early in the litigation, which a judge shall grant, "unless the party against whom such a motion is made shows that: (1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the responding party."

Courts have established a well-settled burden-shifting procedure for analyzing such motions. "The moving party bears the initial burden to demonstrate, through the pleadings and affidavits, that the claims sought to be dismissed are based on the party's 'petitioning activities

13

alone and have no basis other than or in addition to the petitioning activities.'" *Benoit v. Frederickson*, 454 Mass. 148, 152 (2009), quoting from *Wenger v. Aceto*, 451 Mass. 1, 5 (2008). "[T]he motive behind the petitioning activity is irrelevant at this initial stage." *Office One, Inc. v. Lopez*, 437 Mass. 113, 122 (2002). Where the moving party makes the requisite showing, "the burden shifts to the non-moving party to show, by a preponderance of the evidence, through the pleadings and affidavits, that the moving party's petitioning activities were 'devoid of any reasonable factual support or any arguable basis in law' and that the petitioning activities 'caused actual injury to the [non-moving] party.'" *Benoit v. Frederickson, supra* at 152-153, quoting *Wenger v. Aceto, supra*.

As is relevant here, the Massachusetts anti-SLAPP statute is applicable to Apex's counterclaims. *See, e.g. Godin v. Schencks*, 629 F. 3d 79, 92 (1st Cir. 2010) (holding that state anti-SLAPP statutes apply to non-federal claims brought in diversity actions). *Bargantine v. Mechanics Co-op. Bank*, No. CIV.A. 13-11132-NMG, 2013 WL 6211845, at *2 (D. Mass. Nov. 26, 2013).

**1. The Counterclaims are based on Alantra's Petitioning Activity.**

To prevail, the movant (Alantra) must first make a threshold showing that the claim of the non-movant (Apex) is "based on" the movant's protected petitioning activities and has no other "substantial basis." *Duracraft Corp. v. Holmes Prods. Corp.,* 427 Mass. 156, 167 (1998). Under G.L. c. 231, § 59H, petitioning activity "shall mean any written or oral statement made before or submitted to a legislative, executive, or judicial body. . ." Here, it is uncontested that the sole basis for the Counterclaims is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In each of the two claims in the Counterclaims, Apex's counts for breach of contract and for breach of fiduciary duty, Apex cites "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Counterclaims ¶¶ 37, 45.

**2. Apex Cannot Show Alantra's Complaint Is Devoid of Any Reasonable Factual Support or Arguable Basis in Law.**

Once Alantra establishes that the Apex Counterclaims are based on Alantra's petitioning activity as described above, "the burden shifts to [Apex] to demonstrate by a preponderance of the evidence that [Alantra's] petitioning activity was devoid of any reasonable factual support or any arguable basis in law. *Fabre v. Walton,* 436 Mass. 517, 524 (2002). As an initial matter, Apex did not challenge the sufficiency of the Alantra Complaint by moving to dismiss either of Plaintiff's breach of contract or unjust enrichment claims. In fact as referenced in footnote 2 *supra*, Apex complained that ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████ Counterclaims ¶ 21. After taking a pass on an early dispositive motion and complaining that Alantra ███████████████████████, Apex is in no position now to assert that Alantra's Complaint is devoid of any reasonable factual support or any arguable basis of law.

Instead, the allegations in the Alantra Complaint as further supported by the assertions in the Hadfield Aff. filed in support of the Motion, demonstrate that the Alantra Complaint is well-supported. In fact, many of the allegations in the Complaint are admitted in the Apex Answer. In its uncontested that Apex ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████ (Complaint and Answer ¶ 8) ███████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████

██████████ Complaint and Answer ¶¶ 12, 13, 17 and 18. It is also uncontested that on March 30, 2020, Apex finalized a transaction with Fastenal in which Fastenal paid Apex $125 million in cash at closing for certain Apex assets. Complaint and Answer ¶¶ 25, 29.

Fastenal's recent public securities filing disclosed that the fair value of the identifiable intangible assets or goodwill was $123.8 million, and the total tangible property and equipment represented only $1.2 million, or 1% of the purchase price. ██████████

██████████ *Id.* Alantra has also learned through recent public disclosures that as part of the Fastenal transaction, Apex repaid its senior lender in full including all accrued interest, totaling approximately $18.9 million and that the lender, MVC, also received approximately $1.3 million for the sale of the warrant. Hadfield Aff. Ex. 3.

The sole contested issue is whether or not ██████████

[REDACTED] In any case, the record developed to date without the benefit of any discovery far exceeds the low threshold required in establishing that Alantra's petitioning activity was not devoid of any reasonable factual support or any arguable basis in law.

### 3. Alantra Caused No Actual Injury to Apex.

As set forth in Sections Section II(b) and III(a) above, Alantra caused Apex no actual injury. Apex's contention that the information it alleges is "Confidential Information" that "could be used" by Apex's list of customers, competitors, employees, suppliers, among others (Counterclaims ¶ 28), is speculative at best and legally deficient for purposes of establishing that Apex has already sustained injury. Even the unidentified competitor that Apex contends in the Counterclaims obtained [REDACTED], apparently has not utilized any of the allegedly Confidential Information to Apex's detriment. Apex does not identify the competitor, does not describe the information the competitor utilized and does not allege how the competitor's receipt of information damaged or harmed Apex. *Id.*

## IV. Conclusion.

For those reasons, the Counterclaims should be dismissed with prejudice under both Fed. R. Civ. P. 12(b)(6) and pursuant to the Massachusetts anti-SLAPP statute. Alantra requests its reasonable attorneys' fees and costs related to the Special Motion to Dismiss pursuant to G.L. c. 231, § 59H.

**ALANTRA, LLC**

By Its Attorneys,

/s/ Steven J. Torres
Steven J. Torres (BBO#64866)
Torres, Scammon, Hincks & Day, LLP
35 India Street
Boston, MA 02110
P: (617) 206-4894
F: (617) 307-4427
E: storres@tshdlegal.com

Dated: July 24, 2020

**CERTIFICATE OF SERVICE**

      I, Steven J. Torres, hereby certify that on July 24, 2020 I served the above referenced document upon counsel for the Defendant by electronic mail.

                                                */s/ Steven J. Torres*_____
                                                Steven J. Torres