# **REDACTED VERSION**

**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

ALANTRA LLC,

       Plaintiff,

v.

APEX INDUSTRIAL TECHNOLOGIES LLC,

       Defendant.

Case No. 1:20-cv-10852

Chief Judge F. Dennis Saylor, IV

Leave to file granted on 8/14/2020

## **DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS**

The counterclaims filed by Defendant/Counterclaim-Plaintiff Apex Industrial Technologies LLC ("Apex") in this case spring from the misguided decision of ███████████████, Plaintiff/Counterclaim-Defendant Alantra LLC ("Alantra"), to violate ██ ████████████████████████████████████████████████████ and intentionally disclose to the public "a substantial amount" of Apex's "sensitive, non-public, confidential information" that "could be used by Apex's current and prospective customers, competitors, employees, suppliers, lenders, partners, investors, and others in a manner detrimental to Apex." (Counterclaim (Dkt. 13), ¶¶ 2, 3, 15, 28.) Now, adding insult to injury, Alantra asks the Court to dismiss Apex's counterclaims with prejudice, and to award Alantra its attorneys' fees, due to Apex's purported failure to plead the specific details of its damages. Alantra's motion to dismiss should be denied.

First, contrary to Alantra's assertions, Apex has adequately pleaded the damages it has suffered and continues to suffer as a result of Alantra's misconduct. Apex has sufficiently pleaded that Alantra publicly disclosed Apex's highly confidential information, and that disclosure is, in itself, an irreparable harm. Further, Apex has alleged that its confidential

information is now in the hands of at least one of its competitors. The Court may reasonably infer that the competitor will use this information for its own benefit and to the detriment of those it competes against, including Apex.

Second, Alantra asks the Court to scrutinize the nine different categories of confidential information that Alantra improperly disclosed and to determine, at this early stage of the proceedings, that the disclosure of each category could not possibly have injured Apex. Even if this fact-intensive inquiry were appropriate on a motion to dismiss (it is not), Alantra's arguments are built on conclusory assertions unsupported by any citation to legal authority or the pleadings. Taking just a few examples of the confidential information at issue, it is, at a minimum, plausible that public disclosure of that information damaged Apex. Thus, Apex has stated plausible claims for damages and, again, Alantra's motion should be denied.

Finally, Alantra asks the Court to dismiss this case under the Massachusetts anti-SLAPP statute and to award Alantra its attorneys' fees. The Massachusetts anti-SLAPP statute, however, does not apply in this case ███████████████████████████████████████ ████████████████████████████. While New York has its own anti-SLAPP statute, it does not allow special motions to dismiss, such as the motion Alantra has filed here, and it only provides a cause of action to a "public applicant or permittee," which Alantra is not. And even if the Massachusetts anti-SLAPP statute did apply here, the present case is indistinguishable from the leading case on that statute—*Duracraft Corp. v. Holmes Products Corp.*, 691 N.E.2d 935 (Mass. 1998)—where the Supreme Court of Massachusetts found that the movant's motion to dismiss failed. Thus, as in *Duracraft*, Alantra's motion to dismiss should also be denied.

# FACTS

Apex will not restate here all the facts bearing on Alantra's motion to dismiss, which Alantra has, in general, sufficiently summarized in the background section of its memorandum in support. (*See* Dkt. 22 at 2–8.) That said, in subsection II.A of Alantra's memorandum in support, Alantra states, as fact, matters that Apex expressly denied in its pleadings, including that

████████████████████████████████████████████████████████████████

██████████████████████████ (Dkt. 22 at 3–4; Complaint (Dkt. 1), ¶¶ 19, 26, 34; Answer (Dkt. 13), ¶¶ 19, 26, 34.) This is improper on a Rule 12(b)(6) motion to dismiss. Instead, in deciding Alantra's motion to dismiss, "the Court must accept all factual allegations in [Apex's] counterclaim as true and draw all reasonable inferences in the counterclaimant's favor." *W. World Ins. Co. v. Czech*, 275 F.R.D. 59, 61 (D. Mass. 2011).

Additionally, while the Court may consider public records in deciding Alantra's motion to dismiss, Alantra cites no authority that would allow the Court to consider the factual assertions in the Affidavit of Scott W. Hadfield (Dkt. 23) to which Alantra attached certain public records. *See Tosca-Reynoso v. Prajapati*, No. 18-11571-PBS, 2019 U.S. Dist. LEXIS 145195, at *6 & n.4 (D. Mass. May 1, 2019) ("Under Rule 12(b)(6), this Court may properly consider only facts and documents that are part of or incorporated into the [pleadings]. Therefore, this Court will not consider the Affidavit of Dhaval Prajapati which was submitted by the Defendants in support of their motion to dismiss."). Thus, the Court should disregard the Hadfield affidavit.[1]

---

[1] In a related vein, Alantra also improperly cites the Court to cases deciding motions for summary judgment. (Dkt. 22 at 11.) Those cases are subject to entirely different standards than Alantra's motion to dismiss, as a court may consider outside evidence, such as affidavits, on a motion for summary judgment.

**ARGUMENT**

I.    **New York Substantive Law Applies in This Case.**

As Alantra notes in its memorandum in support, the ████████████

████████████████████████████████████████████████████████████

████████████████████ (Dkt. 22 at 9 n.5.)  "It is well-settled law that parties may

select by agreement the body of law that will govern their contractual disputes." *OrbusNeich*

*Med. Co. v. Boston Sci. Corp.*, 694 F. Supp. 2d 106, 113 (D. Mass. 2010).  "And having so

agreed, the parties are bound by their choice of law unless the chosen law violates established

public policy or bears no reasonable relationship to the contract." *Id.* (enforcing the following

choice-of-law provision and applying Massachusetts law to the parties' entire dispute:

"Agreement is governed by the Laws of the Commonwealth of Massachusetts, USA, without

regard for the conflicts of law provisions").  But even when the chosen body of law bears no

reasonable relationship to the contract, "'[t]he law of the state chosen by the parties to govern

their contractual rights and duties will be applied . . . unless . . . *there is no . . . reasonable basis*

*for the parties' choice*.'"  *Shimizu Corp. v. Dow Roofing Sys., LLC*, No. 11-30085-DPW, 2013

U.S. Dist. LEXIS 139260, at *22–23 (D. Mass. Sept. 27, 2013) (quoting Restatement (Second)

Conflict of Laws § 187) (emphasis in original).  For instance, in *Shimizu*, the court found that,

where one party was from Japan and another was from Massachusetts, they had a reasonable

basis for choosing "the neutral, but familiar and well developed law of the United Kingdom,"

such that U.K. law governed. *Id.* at *24.

████████████████████████████████████████████████████

████████ Alantra ████████████████████████████ makes clear throughout its

briefing that New York substantive law may apply in this case.  (*See* Dkt. 22 at 9–11 (repeatedly

citing New York law).) ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ is an issue not

properly suited for resolution on a motion to dismiss, particularly when Alantra did not raise this

issue in its memorandum in support.  If the Court were inclined, however, to make a definitive

finding on this issue at this time, then Apex would request discovery on the issue.  At this stage,

it should suffice that, on the face of the pleadings, New York law appears reasonable.  Because

Alantra is from Massachusetts and Apex is from Ohio (Counterclaim (Dkt. 13), ¶¶ 4–5), ███

████████████████████████████████████████████████

████████████████ *Shimizu*, 2013 U.S. Dist. LEXIS 139260, at \*24.  Within New York

is New York City, a world financial center where many financial advisory firms are located.

Thus, the law of New York is ████████████████████████████.[2]

████████████████████████████████████████████████

████████████████████████, the Court should apply New York substantive

law in this case.

## II.      The Court Should Not Dismiss Apex's Counterclaims Under Rule 12(b)(6).

Alantra makes two related arguments for dismissal under Federal Rule of Civil Procedure

12(b)(6): (1) that Apex has not adequately pleaded damages; and (2) that Apex could not

---

[2] Alantra's website shows that it has an office in New York, such that, if the parties were to take discovery on this issue, discovery would likely only further confirm ████████████████ ████████████████.  *See* https://www.alantra.com/global-presence/united-states-of-america-investment-banking/.

possibly have been damaged by Alantra's public disclosure of Apex's confidential information. Neither argument has merit.

## A. Apex Has Adequately Pleaded its Damages.

The Federal Rules of Civil Procedure require "only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Sepulveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 28 (1st Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). Thus, at the pleading stage, a party "need not . . . specify the measure of damages nor plead . . . [specific] proof of causation." *Palomo v. DeMaio*, No. 5:15-CV-1536 (LEK/TWD), 2017 U.S. Dist. LEXIS 198503, at *16 (N.D.N.Y. Dec. 4, 2017) (internal quotation marks omitted); *see also Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 352 (D. Mass. 2011) ("[T]he Court need not determine at th[e pleading] stage . . . the measure or scope of plaintiffs' alleged damages, because plaintiffs need not plead specific damages flowing from a breach of contract in their complaint.").[3] Further, it bears repeating that, in evaluating whether a party has adequately pleaded its claims, courts "must accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." *Cardigan Mt. Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 87 (1st Cir. 2015) (drawing reasonable inferences in the plaintiff's favor and reversing an order dismissing the plaintiff's suit).

---

[3] Alantra suggests in passing that "under New York law, a claim for breach of fiduciary duty must be pleaded with particularity." (Dkt. 22 at 11 (citing *Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 83 A.D. 3d 804, 807–08 (N.Y. 2011)).) While breach of fiduciary duty must be pleaded with particularity in New York state court, this requirement is based on a state procedural rule, N.Y. C.P.L.R. 3016(b). *Palmetto*, 83 A.D. 3d at 808. That rule does not apply in federal court. *Diversified Constr. of WNY, Inc. v. Sheds USA, Inc.*, No. 04-CV-0739E(Sc), 2005 U.S. Dist. LEXIS 45473, at *5 n.10 (W.D.N.Y. May 25, 2005).

Applying these basic standards, the court in *Hard Rock Café International (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F. Supp. 2d 552 (S.D.N.Y. 2011), found that counterclaim-plaintiffs had adequately pleaded damages for breach of contract where they "allege[d] that the purported breaches damaged their 'goodwill, standing and reputation.'" *Id.* at 567. Similarly, in *U.S. Airways Group v. British Airways Plc*, 989 F. Supp. 482 (S.D.N.Y. 1997), the plaintiff alleged that it had suffered "substantial out-of-pocket expenses . . . and forg[one] opportunities to mitigate [the defendant's] breach of contract." *Id.* at 492 (internal quotation marks omitted). The court concluded that, "[a]lthough the allegations of damages are short on specifics and [the plaintiff] may ultimately have difficulty establishing the amount of damages caused by the alleged breach, such allegations are sufficient to survive a motion to dismiss." *Id.*

Because all reasonable inferences must be drawn in the nonmovant's favor, courts have also found that damages are adequately pleaded where they can be reasonably inferred from the facts pleaded. For instance, in *Palomo*, the counterclaim-plaintiffs alleged that they had suffered damages in the amount of $160,000 for each breach of contract. 2017 U.S. Dist. LEXIS 198503, at *15. The counterclaim-defendant argued that this was the only allegation bearing directly on damages and that the counterclaim-plaintiffs had not alleged facts showing how the counterclaim-defendant's breaches caused those damages. *Id.* The court disagreed because the counterclaim-plaintiffs had also pleaded that the counterclaim-defendants, in breaching the contracts, had withheld property from the counterclaim-plaintiffs "intended to produce or aid in the production of revenue for Counter-Plaintiffs" and property "intended to reduce expenses . . . of Counter-Plaintiffs." *Id.* (internal quotation marks omitted). The court found that "Counter-Plaintiffs' allegations regarding damages lack specifics, but permit a plausible inference that deprivation of company property could have resulted in increased expenses and

foregone revenue." *Id.* at *16. Thus, the counterclaim-plaintiffs had adequately pleaded damages. *Id.* at *17.

Similarly, in *Comfort Inn Oceanside v. Hertz Corp.*, No. 11-CV-1534 (JG) (JMA), 2011 U.S. Dist. LEXIS 126294 (E.D.N.Y. Nov. 1, 2011), the plaintiff alleged it suffered damages at the hands of the defendant due to "(1) a lack of providing a company car . . . and (2) loss of revenue due to lack of providing cars for hotel residents." *Id.* at *26 (internal quotation marks omitted). Although this "allegation d[id] not fill in all the blanks as to how [the defendant's] alleged breach resulted in the damages [the plaintiff] asserts, it adequately allege[d] damages resulting from [the defendant's] breach." *Id.* at *27. Making reasonable inferences based on the allegations, the court found that "[i]t is plausible that the lack of a company car would result in damages because [the plaintiff] would have had to obtain alternate transportation. And it is also plausible that the lack of rental cars provided to [the plaintiff's] guests would result in foregone commissions and dissatisfied customers." *Id.* at *26–27.

As in each of those cases, Apex has adequately alleged damages in this case. Apex has alleged that Alantra publicly disclosed "a substantial amount" of Apex's "sensitive, non-public, confidential information" that "could be used by Apex's current and prospective customers, competitors, employees, suppliers, lenders, partners, investors, and others in a manner detrimental to Apex," resulting in damages to Apex. (Counterclaim (Dkt. 13), ¶¶ 2, 3, 15, 28, 30, 37, 46.) Here, "improper disclosure of confidential information is, in itself, an irreparable harm." *Covidien LP v. Esch*, 229 F. Supp. 3d 94, 99 (D. Mass. 2017) (internal quotation marks omitted); *accord Hirschfeld v. Stone*, 193 F.R.D. 175, 187 (S.D.N.Y. 2000) ("Public disclosure of highly personal and confidential information . . . result in a harm that is both substantial and irreversible. *See Plante v. Gonzalez*, 575 F.2d 1119, 1135 (5th Cir. 1978) ('when a legitimate

expectation of privacy exists, violation of privacy is harmful without any concrete consequential damages').").

Even if these allegations alone were not enough, Apex further alleges that its "Confidential Information has ended up in the hands of one of Apex's competitors ███ ███████████████████████████." (Counterclaim (Dkt. 13), ¶ 28.) From this allegation, the Court may reasonably infer that a competitor in possession of Apex's highly "sensitive, non-public, confidential information" will use that information to its own benefit and—by logical extension—to the detriment of those it competes against, including Apex. Indeed, such use is, as a practical matter, inevitable. *See Leibowitz v. Aternity, Inc.*, No. 10 CV 2289 (ADS), 2010 U.S. Dist. LEXIS 70844, at *52 (E.D.N.Y. July 14, 2010) (citing *Marcam Corp. v. Orchard*, 885 F. Supp. 294, 297 (D. Mass. 1995) and finding that the counterclaim-plaintiff's former employee, if hired by a competitor, would inevitably "either disclose or make use" of the counterclaim-plaintiff's confidential information, giving the competitor "an unfair advantage in the . . . marketplace" and irreparably harming the counterclaim-plaintiff).

Alantra faults Apex for not providing more specific details regarding the identity of the competitor and the specific information acquired, but Apex is not required to plead its damages with particularity. Indeed, Alantra itself begins its Argument section with a quote from *Twombly* stating that a pleading "'attacked by a . . . motion to dismiss does not need detailed factual allegations.'" (Dkt. 22 at 8 (quoting 550 U.S. at 555–56).) Here, as in the cases of *U.S. Airways* and *Palomo*, the Court may reasonably infer damages even if Apex's allegations lack specifics. Thus, Apex has adequately pleaded the damages it has suffered and continues to suffer as a result of Alantra's misconduct.

**B.** **Apex Has Plausibly Alleged that Alantra's Disclosure of Apex's Confidential Information Damaged Apex.**

Alantra's next argument is that, even if Apex's damages allegations are facially adequate, the Court should further analyze the nine categories of confidential information in Apex's counterclaims in light of public records and determine, at the pleading stage, that Alantra's disclosure of each category could not possibly have damaged Apex. (Dkt. 22 at 11.) Alantra does not cite any authority suggesting that this fact-intensive inquiry is appropriate at this stage of the proceedings, and courts routinely hold to the contrary. *See*, *e.g.*, *Butler v. Anderson*, 434 B.R. 208, 218 (Bankr. D. Mass. 2010) ("[A] veil piercing claim, even if it was raised, is a fact intensive analysis that would preclude dismissal at this stage."); *Berard v. Town of Millville*, 113 F. Supp. 2d 197, 202 (D. Mass. 2000) ("Although Berard's claim appears weak and may not ultimately survive summary judgment, dismissal would be premature at this stage, especially because the inquiry into whether a statement is fact or opinion is fact-intensive."). As stated in another recent case denying a motion to dismiss, "[i]t may [even] be that expert testimony on the topic is required to resolve the issue." *Belknap v. Partners Healthcare Sys., Inc.*, No. 19-11437-FDS, slip op. at 7 (D. Mass. Aug. 5, 2020) (Saylor, J.). Thus, the Court should refuse to undertake this inquiry or to dismiss on this basis.

Even if the Court were to further entertain Alantra's argument on this point, Apex's counterclaims must be given the benefit of the deferential motion to dismiss standard. That is, the Court "must accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." *Cardigan*, 787 F.3d at 87. As discussed in the preceding section, Apex has alleged that each of the nine categories of Confidential Information are "sensitive, non-public, confidential information" that Apex "protects . . . from public disclosure" and "does not publish . . . █████████████████████████." (Dkt. 22, ¶¶ 2, 25, 27.) Further,

the information "could be used by Apex's current and prospective customers, competitors, employees, suppliers, lenders, partners, investors, and others in a manner detrimental to Apex," and "Alantra's disclosure of Confidential Information ███████████ causes and threatens to cause significant harm to Apex in the marketplace." (*Id.*, ¶ 28.)

Given these well-pleaded facts, the only remaining question is whether Apex's claims are plausible under the standard of *Twombly* and *Iqbal*. If the Court determines that Alantra's public disclosure of **any portion** of Apex's confidential information (i.e. any one of the nine categories) could plausibly have damaged Apex, then Apex has adequately stated its claims, and Alantra's motion to dismiss must be denied. *See Charette v. St. John Valley Soil & Water Conservation Dist.*, No. 1:17-cv-35-GZS, 2017 U.S. Dist. LEXIS 94433, at *22 (D. Me. June 20, 2017) ("Plaintiff has set out multiple theories to support each count in her Complaint, and the Court declines to dismiss a count if any of the individual theories are sufficient to state a claim to relief."); *see also BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief.").

Analyzing even just some of the categories of confidential information, it is plausible that Alantra's disclosure of Apex's confidential information harmed Apex. For instance, the first category of confidential information is ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ (Counterclaim (Dkt. 13), ¶ 28.)

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

11

████████████████████████████████████████████████████████ Now, however, Alantra argues without citation to any legal authority, pleadings, or public documents that "surely Alantra cannot be deemed to have breached any contractual obligation or fiduciary duty by initiating this action for Apex's failure to pay" and, ████████████████████████████. (Dkt. 22 at 11.) This argument incorrectly assumes, however, that ████████████████████████ ████████████████████████████████████████████ As expressly alleged in Apex's counterclaims, Alantra easily could have ████████████████ ████████████████████████████████████████████. (Counterclaim (Dkt. 13), ¶¶ 3, 29.) In any event, Alantra conspicuously avoids the issue at hand: whether disclosure of the Agreement could possibly damage Apex. It clearly could. For instance, ████ ████████████████████████████████████████████████████████ ████████████████████████████████. This puts Apex at an obvious disadvantage.

Further, with regard to ████████████████████████████████████ ████████ Alantra argues—again without any citation—that "Apex provides no basis that the disclosure of ████████████████████████████████ could cause it damage, particularly here where Apex has already consummated a transaction." (Dkt. 22 at 11–12.) Apex, however, is not required to plead in painstaking detail how each disclosure of confidential information has led, or will lead, to financial harm. *See Comfort Inn*, 2011 U.S. Dist. LEXIS 126294, at *27 (Although the plaintiff's "allegation d[id] not fill in all the blanks as to how [the defendant's] alleged breach resulted in the damages it asserts," the court could reasonably infer a plausible connection.). In any event, Alantra seems to assume, now that Apex has consummated a transaction, it will ████████████████████████████████████.

There is no basis for this assumption, and it is plausible, if not probable, that Apex ███████ ████████████████████████████████████████████████. As such, ███████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████. Because it is plausible that disclosure of the information in the first category harmed Apex, Apex has stated plausible claims for damages, and Alantra's motion to dismiss should be denied.

Other examples only further illustrate the viability of Apex's claims. For the seventh category of confidential information, Alantra improperly disclosed ████████████████████ ████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████ Alantra argues, without any citation or explanation, that "th[is] general reference" could not "cause harm to Apex." (Dkt. 22 at 12.) ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████. In any of these scenarios, damages would naturally flow from Alantra's improper disclosure.

As still another example, as part of the eighth category Alantra disclosed that ██████ ████████████████████████████████████████████████████████████████████████████ █████████████; Counterclaim (Dkt. 13), ¶ 28.) Alantra argues only that the information in this category was taken from one of two SEC filings. (Dkt. 22 at 12.) This simply is not true, at least with regard to the language quoted above. (*See* Dkt. 23 at Exs. 2, 3.) And, even more so than the information in the preceding category, █████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████

13

████████. Each of the categories of information discussed above provides an independent basis for finding that Apex has pleaded plausible claims for damages and, because Apex has alleged plausible claims for damages, the Court should deny Alantra's motion to dismiss.

**C.** **Even Assuming *Arguendo* that Apex Has Not Adequately Pleaded Plausible Claims for Damages, Dismissal Should Be Without Prejudice and with Leave to Amend.**

In both its motion to dismiss and its supporting memorandum, Alantra requests that the Court dismiss Apex's claims **with prejudice**. (Dkt. 21 at 2; Dkt. 22 at 18.) Alantra never provides any explanation or argument on this point. In any event, even if the Court were to find that Apex has not adequately pleaded facts giving rise to plausible claims for damages, Apex requests that the Court dismiss without prejudice and give Apex leave to amend so that it may plead additional facts. Apex has not previously requested or received leave to amend, and "[a]t this stage of the proceedings, leave to amend is normally granted liberally." *Guo v. Datavantage Corp.*, No. 07-40051-FDS, 2008 U.S. Dist. LEXIS 17607, at *14 (D. Mass. Jan. 28, 2008) (Saylor, J.). In addition, Alantra has not pointed to any undue delay or prejudice that amendment would cause, and "[i]n the absence of prejudice and undue delay, the Court is compelled by the liberal standard in favor of allowing amendment." *Cabi v. Boston Children's Hosp.*, 161 F. Supp. 3d 136, 164 (D. Mass. 2016) (where plaintiffs "fail[ed] to plead sufficient allegations," dismissal was without prejudice because, in their briefing, "Plaintiffs request an opportunity to amend on any claim the Court dismisses").

**III.** **The Court Should Not Dismiss Apex's Counterclaims Under Any Anti-SLAPP Statute.**

    **A.** **The Massachusetts Anti-SLAPP Statute Does Not Apply in This Case, and Alantra Cannot Maintain its Anti-SLAPP Motion Under New York Substantive Law.**

"[A] federal court sitting in diversity jurisdiction applies the state's substantive law and the federal procedural rules." *Godin v. Schenks*, 629 F.3d 79, 85 (1st Cir. 2010). Until recently, "[c]ourts in this district uniformly characterize[d the Massachusetts Anti-SLAPP] statute as procedural," such that the statute did not apply in federal court. *Turkowitz v. Town of Provincetown*, No. 10-10634-NMG, 2010 U.S. Dist. LEXIS 140190, at *6 (D. Mass. Dec. 1, 2010) (collecting cases). More recently, however, the First Circuit held in *Godin* that Maine's Anti-SLAPP statute is substantive law that applies in federal court. 629 F.3d at 85–92. Subsequently, a court within this district noted that "[t]he Massachusetts anti-SLAPP statute is . . . in all respects identical to the Maine statute. Therefore, the Court will extend *Godin*'s holding and find the Massachusetts anti-SLAPP statute applicable as substantive law to diversity cases brought in federal court." *Bargantine v. Mechs. Coop. Bank*, No. 13-11132-NMG, 2013 U.S. Dist. LEXIS 169284, at *8 (D. Mass. Nov. 26, 2013). Citing *Godin* and *Bargantine*, Alantra concludes without any analysis that "the Massachusetts anti-SLAPP statute is applicable to Apex's counterclaims." (Dkt. 22 at 14.)

The Massachusetts anti-SLAPP statute, however, would only be applicable here if Massachusetts substantive law applied in this case. As discussed above in Section I of the Argument, it does not. ██████████████████████████████████, New York substantive law applies. In *Liberty Synergistics v. Microflo Ltd.*, No. CV 11-0523 (SJF) (ETB), 2011 U.S. Dist. LEXIS 173202 (E.D.N.Y. Oct. 26, 2011), the court faced a similar factual pattern. The defendants filed a motion to strike under the California anti-SLAPP statute, but the

court determined that New York substantive law applied. *Id.* at *27–29. The court concluded that it had to deny the motion under California law. *Id.* at *28–29. Following *Liberty*, this Court should similarly deny Alantra's motion under Massachusetts law.

In *Liberty*, the court next considered whether the defendants' motion could be sustained under New York law. As the court recognized, "New York has its own anti-SLAPP statute, codified at New York Civil Rights Law §§ 70-a and 76-a." *Id.* at *29. The court continued, however, that "even if there were authority allowing the Court to convert an anti-SLAPP motion brought under California [law] to one brought under New York law, [the defendants' motion] would fail" for reasons that are equally applicable here. *Id.* As an initial matter, New York's anti-SLAPP statute does not allow a special motion to strike or dismiss, as Alantra has filed here. *Id.* at *30. Further, under New York law, a strategic lawsuit against public participation (i.e. "SLAPP") is defined as "an action, claim, cross claim or counterclaim for damages that is brought by a public applicant or permittee, and is materially related to any efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission." N.Y. Civ. Rights Law § 76-a(1)(a). A "public applicant or permittee," in turn, is "any person who has applied for or obtained a permit, zoning change, lease, license, certificate or other entitlement for use or permission to act from any government body, or any person with an interest, connection or affiliation with such person that is materially related to such application or permission." N.Y. Civ. Rights Law § 76-a(1)(b). The New York anti-SLAPP statute was enacted to address "'a rising concern about the use of civil litigation, primarily defamation suits, to intimidate or silence those who speak out at public meetings against proposed land use development and other activities requiring approval of public boards.'" *Chandok v. Klessig*, 632 F.3d 803, 818 (2d Cir. 2011) (quoting *600 W. 115th St. Corp. v. Von Gutfield*, 603 N.E.2d 930,

933 n.1 (N.Y. 1992)). Here, as in *Liberty*, Apex "is not a 'public applicant or permittee' and this action has nothing to do with comments on or opposition to an application or permission from a public board." *Liberty*, 2011 U.S. Dist. LEXIS 173202, at \*30. Thus, Alantra cannot proceed with an anti-SLAPP motion under New York law.

**B.      Even if the Massachusetts Anti-SLAPP Statute Applied to This Case, Alantra's Motion Fails.**

The seminal case on the Massachusetts anti-SLAPP statute is *Duracraft Corp. v. Holmes Products Corp.*, 691 N.E.2d 935 (Mass. 1998), which Alantra cites repeatedly but does not discuss in any depth. (*See* Dkt. 22 at 13–14.) The case warrants a closer examination.

In *Duracraft*, Marino had a non-disclosure agreement with Duracraft. 691 N.E.2d at 937–38. While sitting for a deposition, Marino offered testimony that, according to Duracraft, violated his non-disclosure agreement. *Id.* at 938. Thus, Duracraft sued Marino for breach of contract and breach of fiduciary duties. *Id.* Marino responded with a special motion to dismiss under the Massachusetts anti-SLAPP statute, arguing that his testimony at the deposition was "petitioning activity" protected under the statute. *Id.* at 938–39. The lower courts denied Marino's special motion to dismiss, and the Supreme Court of Massachusetts affirmed. *Id.* at 938, 944.

The Supreme Court of Massachusetts began its analysis with a general discussion of the purpose and scope of the Massachusetts anti-SLAPP statute. "[T]he apparent purpose of the anti-SLAPP statute [is] to dispose expeditiously of merit less lawsuits that may chill petitioning activity." *Id.* at 943. The court noted that:

> The typical mischief that the [statute] intended to remedy was lawsuits directed at individual citizens of modest means for speaking publicly against development projects. SLAPP suits have been characterized as generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so.

*Id.* at 940 (internal quotation marks omitted). The court went on to explain that it was "dubious that the Legislature intended to create an absolute privilege" for petitioning activity. *Id.* The court also saw "no evidence that the statute was intended to reach suits . . . between two corporate competitors . . . , where the special motion may have been deployed not to limit 'strategic litigation,' but as an additional litigation tactic." *Id.* at 940–41.

Having laid this foundational framework, the court held that, to avoid unconstitutionality, the statute must account for the fact that "[m]any preexisting legal relationships may properly limit a party's right to petition, including enforceable contracts in which parties waive rights to otherwise legitimate petitioning" and also including "fiduciary relationships." *Id.* at 942. To account for this, the court interpreted the Massachusetts anti-SLAPP statute to require the "movant who 'asserts' protection for its petitioning activities . . . to make a threshold showing through the pleadings and affidavits that the claims against it are 'based on' the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." *Id.* at 943. As Alantra admits (Dkt. 22 at 14), it is only once this showing is met that "the burden shifts to the nonmoving party as provided in the anti-SLAPP statute." *Id.*

Applying these rules to the case before the court in *Duracraft*, the court noted that "Duracraft submitted to the court a copy of [its] nondisclosure agreement" with Marino, and the court found that the agreement "constitutes a substantial basis other than Marino's petitioning activity to support Duracraft's claims." *Id.* Thus, Marino's special motion to dismiss failed. *Id.* at 943–44; *see also Agenus, Inc. v. McCourt*, No. 139259, 2018 Mass. Super. LEXIS 15, at *3 (Mass. Super. Ct. Jan. 18, 2018) (denying anti-SLAPP motion seeking dismissal of breach of contract and breach of fiduciary duty claims because, *inter alia*, "[t]he Supreme Judicial Court has held that a claim for violation of a non-disclosure agreement necessarily has a substantial

basis other than defendant's petitioning activity, and therefore does not implicate" the Massachusetts anti-SLAPP statute); *Proteon, Inc. v. Digital Equip. Corp.*, No. 98-01533-F, 1998 Mass. Super. LEXIS 685, at *27 (Mass. Super. Ct. Jan. 13, 1999) (In *Duracraft*, "[t]he Supreme Judicial Court held that there may be enforceable contracts which limit a party's right to petition such that a party may sue another on the ground that the petitioning activity violated the agreement. . . . It is the alleged breach, that happens to be in the form of legal action, not the legal action alone that is the basis of this contract claim.").

*Duracraft* is on all fours with the present case. Alantra cannot carry its burden of showing that Apex's counterclaims are based only on Alantra's petitioning activity ▉▉▉▉▉▉▉ ▉▉▉▉▉▉ because Alantra's ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ "constitutes a substantial basis other than [Alantra's] petitioning activity to support [Apex's] claims." *Duracraft*, 691 N.E.2d at 943.[4] For purposes of its motion to dismiss, Alantra also has not contested that it owes Apex fiduciary duties. These fiduciary duties are yet another "substantial basis" supporting Apex's claims. *See id.* at 942 ("fiduciary relationships" "may properly limit a party's right to petition"). Because Alantra cannot meet its threshold showing, its motion to dismiss also fails under Massachusetts law, and it is not entitled to an award of attorneys' fees.

This result is also wholly consistent with the purpose of the Massachusetts anti-SLAPP statute. This is not a case where a large corporate interest has filed suit to silence individual citizens of modest means. It is a lawsuit between two companies, and Apex's counterclaims are unlikely to chill petitioning activity. As stated in Apex's Counterclaim, "▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

---

[4] Just like in *Duracraft*, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

█████████████████████████" and without risking a countersuit.  (Counterclaim (Dkt. 13), ¶ 32.)  It could have, for instance, █████████████████████████████. (*Id.*, ¶¶ 3, 29.)  It did not do so, and it must now live with the consequences of that decision, which include facing a countersuit for breach of contract and breach of fiduciary duty.  Therefore, Alantra's motion to dismiss should be denied.

<h2 style="text-align:center">CONCLUSION</h2>

Alantra is a sophisticated global financial advisory firm, , Alantra's motion to dismiss is premised on the notion that Apex could not possibly have been harmed when Alantra publicly disclosed Apex's confidential business information and that a Massachusetts law designed to apply to public permittees should be superimposed ███████████████████████████████████████ ████████████████████.  For these reasons, the Court should deny Alantra's Motion to Dismiss Counterclaims *in toto*.

Respectfully submitted,

*/s/ David A. Wilson*_____
David A. Wilson (BBO # 552388)
THOMPSON HINE LLP
1919 M Street, N.W., Suite 700
Washington, D.C. 20036-3537
Telephone: (202) 331-8800
Facsimile: (202) 331-8330
David.Wilson@ThompsonHine.com

Brian J. Lamb (*pro hac vice*)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114
Telephone: (216) 566-5500
Facsimile: (216) 566-5800
Brian.Lamb@ThompsonHine.com

Jesse Jenike-Godshalk (*pro hac vice*)
THOMPSON HINE LLP
312 Walnut Street, 14th Floor
Cincinnati, Ohio 45202
Telephone: (513) 352-6700
Facsimile: (513) 241-4771
Jesse.Godshalk@ThompsonHine.com

*Counsel for Defendant Apex Industrial Technologies LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on August 17, 2020, a copy of this document was served on the

following via email:

Steven J. Torres
Torres, Scammon, Hincks & Day, LLP
35 India Street
Boston, MA 02110
storres@tshdlegal.com

*/s/ David A. Wilson*