UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| ALANTRA LLC,<br><br>    **Plaintiff and**<br>    **Counterclaim-Defendant,**<br><br>    v.<br><br>APEX INDUSTRIAL TECHNOLOGIES LLC,<br><br>    **Defendant and**<br>    **Counterclaim-Plaintiff.** | Civil Action No.<br>20-10852-FDS |

**MEMORANDUM AND ORDER**
<u>**ON PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**</u>

**SAYLOR, C.J.**

    This is an action for breach of contract and unjust enrichment. Plaintiff Alantra LLC alleges that defendant Apex Industrial Technologies LLC breached a Letter Agreement executed by the parties by not paying a transaction fee to which it alleges it is entitled. Plaintiff further alleges that because it performed under the contract but was not compensated, defendant has been unjustly enriched as a result.

    In its answer, defendant asserts counterclaims against plaintiff for breach of contract and breach of fiduciary duties due to plaintiff's disclosure of defendant's confidential information by publicly filing its complaint and attaching the Letter Agreement as an exhibit without defendant's written consent or seeking Court approval to impound them.

    Plaintiff has moved to dismiss the counterclaims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted and pursuant to the Massachusetts anti-SLAPP


statute, Mass. Gen. Laws. ch. 231, § 59H.  For the reasons set forth below, the motion will be denied.

I.     **Background**

The following factual allegations are drawn from the counterclaim.

Apex Industrial Technologies LLC is a privately-held company that provides supply chain products and technologies.  Alantra LLC is an investment banking firm.

On August 13, 2019, Apex and Alantra entered into a "Letter Agreement" whereby Alantra agreed to act as Apex's exclusive financial adviser in connection with a potential debt and/or equity transaction.  The Agreement included a provision for a Transaction Fee, whereby Apex allegedly agreed to pay Alantra a fee if, during a defined time period, Apex entered into a qualifying transaction with a third party.  In addition, pursuant to their contractual relationship Apex also allegedly provided confidential information to Alantra that Alantra agreed to not disclose without Apex's prior written consent.

After the parties executed the Agreement, Apex entered into a limited asset sale with a third party without the assistance of Alantra.  Alantra alleges that this was a qualifying transaction under the Transaction Fee provision of the Agreement, and has asked for payment from Apex.  Apex, however, alleges that the sale did not qualify and has therefore refused to pay the fee.

Alantra brought suit against Apex on May 5, 2020.  According to Apex, Alantra publicly disclosed confidential information in violation of the agreement both within the complaint and by attaching the Letter Agreement as an exhibit.  Alantra did not ask the Court to seal any portion of those materials.

On June 25, 2020, Apex moved to file its answer under seal, which was granted.  On June 29, 2020, Apex filed an answer and asserted counterclaims.  Alantra has now moved under seal

to dismiss the counterclaims.

## II.     Standard of Review

On a motion to dismiss made pursuant to Rule 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

Under the Massachusetts anti-SLAPP statute, a court must grant a movant's special motion to dismiss if the non-moving party's claim is based on the movant's right to petition under the federal or state constitution, unless the non-moving party can show that: "(1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the [non-moving] party." Mass. Gen. Laws. ch. 231, § 59H.

**III.    Analysis**

    **A.    Rule 12(b)(6)**

Alantra contends that the counterclaims should be dismissed because any information the complaint disclosed was already publicly available, and therefore the counterclaims do not adequately allege that Apex suffered damages. (Pl. Mem. at 11-13). However, Apex supports that contention only by reference to an affidavit of Scott W. Hadfield and the documents attached to it.

At the motion to dismiss stage, "any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Moreover, the Hadfield Affidavit does not fall into one of the "narrow exceptions" to this rule, including "documents the authenticity of which are not disputed by the parties," "official public records," "documents central to plaintiffs' claim," and "documents sufficiently referred to in the complaint." *Id.* Therefore, the Court will not consider the assertions made in the affidavit nor the exhibits attached to it.

Furthermore, even if some of the information in the complaint was publicly available, the counterclaims allege that the disclosure of other information, including "highly sensitive lists of [its] 'Designated Investors' and 'Previously Contacted Investors'" and the specific terms of the Letter Agreement, was not. (Def. Mem. at 11). At the motion to dismiss stage, the Court must accept those allegations as true. *Twombly*, 550 U.S. at 555. It will therefore assume that the material disclosed was in fact confidential.

Alantra also contends that even if the disclosed information was confidential, the counterclaims fail to properly plead damages resulting from the disclosure beyond a "legally

insufficient conclusory contention that it has suffered harm." (Pl. Mem. at 11).[1]  Fed. R. Civ. P. 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." *See Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 8 (1st Cir. 2011).  Here, the counterclaims adequately allege damages that plausibly arise out of the alleged breach of contract and breach of fiduciary duty.  Disclosing confidential information "is, in itself, an irreparable harm." *Covidien LP v. Esch*, 229 F. Supp. 3d 94, 99 (D. Mass. 2017) (quoting *Bos. Sci. Corp. v. Lee*, 2014 WL 1946687, at *6 (D. Mass. May 14, 2014)); *see also South Nassau Control Corp. v. Innovative Control Mgmt. Corp.*, 1996 WL 496610, at *4 (E.D.N.Y. June 20, 1996) (finding that the "likely use of" improperly disclosed confidential information constitutes irreparable harm).

Furthermore, the counterclaims allege more than "conclusory contention[s]" that Apex suffered harm from the disclosure.  They allege that the improperly disclosed confidential information "could be used by Apex's current and prospective customers, competitors, employees, suppliers, lenders, partners, investors, and others in a manner detrimental to Apex." (Def. Counterclaim ¶ 28).  For example, they allege that Apex's future financial advisors or business partners "could use the Agreement as leverage to persuade Apex to accept comparable terms in similar agreements," which puts Apex at a bargaining disadvantage, and that competitors could use "Apex's potential investors to better understand Apex's operations and to better compete against Apex." (Def. Mem. at 12-13).  They further allege that its improperly disclosed confidential information has already "ended up in the hands of one of [its] competitors via [Alantra's] public filing of the [c]omplaint." (Def. Counterclaim ¶ 28).

---

[1] The parties appear to dispute which state's laws govern their claims.  Apex asserts that New York law applies to the counterclaims due to a choice-of-law provision in the Letter Agreement.  (*See* Def. Mem. at 4-5). Alantra concedes that the Letter Agreement includes that provision, yet also appears to allege that Massachusetts law should be used to determine the adequacy of the counterclaims.  (*See* Pl. Mem. at 9-11).  Because the counterclaims adequately assert damages under either state's laws, the Court need not decide which laws apply at this stage.

Those allegations are sufficient to raise an inference that Apex plausibly suffered damages as a result of the disclosure of its confidential information.  *See SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 2019 WL 3358599, at *2 (D. Mass. July 25, 2019) (noting that "it is common sense that the misuse of [the plaintiff's] confidential information . . . would constitute irreparable harm to the company"); *Smith McDonnell Stone & Co. v. Delicato Vineyards*, 1995 WL 375918, at *4 (S.D.N.Y. June 22, 1995) (finding that a complaint's allegations that a breach of contract "'reduce[d] [the plaintiff's] value,' improved 'the market position of a direct competitor,' and . . . 'reduc[ed] [the plaintiff's] ability to engage in confidential exclusive [] negotiations with other parties'" were sufficient allegations of damages to withstand a Fed. R. Civ. P. 12(b)(6) motion).[2]  The counterclaims need not specifically allege how the prospective customers, competitors, or investors of Apex have already used the disclosed information to the detriment of Apex; the fact that the information is now public and therefore these parties have the opportunity to do so is sufficient to plausibly raise an inference of damages.  *See Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 352 (D. Mass. 2011) (noting that "plaintiffs need not plead specific damages flowing from a breach of contract in their complaint"); *Errant Gene Therapeutics, LLC v. Sloan-Kettering Institute for Cancer Research*, 2016 WL 205445, at *7 (S.D.N.Y. Jan. 15, 2016) (noting that the complaint need not "specify the measure of damages nor plead . . . [specific] proof of causation") (internal quotations omitted).

### B.    The Massachusetts Anti-SLAPP Statute

Alantra also contends that the counterclaims should be dismissed under the Massachusetts anti-SLAPP statute, Mass. Gen. Laws. ch. 231, § 59H.  (Pl. Mem. at 13).  That

---

[2] Alantra asserts that Apex "does not adequately explain . . . why the Court should be required to draw [such] an inference." (Pl. Reply at 2).  But the Court is required to draw all plausible inferences in favor of the non-moving party, in this case Apex, at the motion to dismiss stage.  It is certainly plausible that the disclosure of confidential information resulted in a compensable injury.

statute provides that a party may bring a "special motion to dismiss" when the claims against it are based solely on the exercise of its right to petition under the federal or state constitution. Mass Gen. Laws. ch. 231, § 59H.

Apex contends that the Massachusetts statute does not apply to this dispute because the choice-of-law provision in the parties' Letter Agreement directs the court to apply New York substantive law. (Def. Mem. at 15). It further contends that its counterclaims should not be dismissed even if the motion were converted into a motion under the New York anti-SLAPP statute. (*Id.* at 16-17). Alantra contends that the Massachusetts statute is applicable. It alleges that even if New York law governs claims arising under the Letter Agreement between the parties, the claim does not arise under the Agreement but rather is premised on its petitioning of this Court within the Commonwealth and therefore the statute is applicable. (Pl. Reply at 3-4).

Assuming, without deciding, that the Massachusetts anti-SLAPP statute applies, the special motion to dismiss will be denied. In order to prevail on a special motion to dismiss pursuant to the statute, the moving party must "ma[ke] the threshold showing that the claims against it are 'based on petitioning activities and had no substantial basis other than or in addition to those activities.'" *Steinmetz v. Coyle & Caron, Inc.*, 862 F.3d 128, 135 (1st Cir. 2017) (quoting *Baker v. Parsons*, 434 Mass. 543, 551 (2001)); *see also 477 Harrison Ave., LLC v. JACE Boston, LLC*, 483 Mass. 514, 518 (2019) (noting that the anti-SLAPP analysis must proceed sequentially, beginning with the threshold stage). Alantra contends that the counterclaims are based solely on the fact that it filed a complaint in this Court, which is a protected petitioning activity under the statute. (Pl. Mem. at 14); *see also 477 Harrison Ave., LLC*, 483 Mass. at 520 ("Commencement of litigation is quintessential petitioning activity.").

However, the counterclaims are not based on Alantra's petitioning activities alone; rather,

they have a substantial basis in Alantra's alleged breach of a contractual duty not to disclose confidential information and alleged breach of the fiduciary duties of loyalty and due care. Complaints that allege breaches of contract and fiduciary duties, where the breaches happen to have been perpetrated while performing a petitioning activity, are not based solely on that petitioning activity. Thus, in *Duracraft Corp. v. Holmes Products Corp.*, 427 Mass. 156 (1998), an employer filed a complaint against a former employee for breaches of contract and fiduciary duties due to an alleged violation of a nondisclosure agreement that occurred when the employee testified in a deposition. The court found that because the complaint had a substantial basis in the contract between the parties and their fiduciary relationship, it was not based solely on the employee's petitioning activity. *Id.* at 168; *see also Agenus, Inc. v. McCourt*, 34 Mass. L. Rptr. 645, 645 (Mass. Super. Ct. 2018) ("The Supreme Judicial Court has held that a claim for violation of a non-disclosure agreement necessarily has a substantial basis other than defendant's petitioning activity, and therefore does not implicate § 59H."); *Proteon, Inc. v. Digital Equip. Corp.*, 1999 WL 1336438, at *9 (Mass. Super. Ct. Jan. 13, 1999) ("[T]here may be enforceable contracts which limit a party's right to petition such that a party may sue another on the ground that the petitioning activity violated the agreement.").

Here, the counterclaims allege breaches of contract and fiduciary duties by Alantra. The fact that Alantra allegedly committed those breaches while performing a petitioning activity does not compel the conclusion that the counterclaims are based on that petitioning activity alone. As in *Duracraft*, the counterclaims have a substantial basis in the Letter Agreement and the fiduciary relationship between the parties. Therefore, Alantra has not met the threshold burden of showing that the counterclaims are based solely on the filing of the complaint.

## IV.   Conclusion

For the foregoing reasons, plaintiff's motion to dismiss is DENIED.

**So Ordered.**

Dated:  October 23, 2020

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court